# Exhibit H



# OPERATIONS ORDER

| SUBJECT: | CIVIL IMMIGRATION ENFORCEMENT | |
|---|---|---|
| DATE ISSUED: 01-18-25 | | NUMBER: 4 |

1. In various contexts, members of service may encounter federal agents engaged in civil immigration enforcement. Members of service may also interact with individuals potentially subject to civil immigration enforcement. This directive serves as a reminder of city and state law that govern these matters. It also provides operational guidance to members of service in such situations.

2. The core principle for all members of service is to keep in mind the distinction between criminal enforcement and civil immigration enforcement.

3. The Department investigates criminal activity without regard to a person's immigration status. The Department continues to work daily with federal law enforcement agencies in connection with a wide range of criminal investigations. In particular, the Department participates in task forces with a variety of federal law enforcement agencies investigating violations of federal criminal law.

4. The fact that a person is present in the United States without lawful authorization is a civil matter, not a crime. That person is subject to civil immigration enforcement by federal authorities, which may result in detention and deportation.

5. City law prohibits the use of city resources for "enforcement of any civil provision of the Immigration and Nationality Act and any provision of such law that penalizes a person's presence in, entry into, or reentry into the United States" Administrative Code § 10-178.

6. Accordingly, members of service are not permitted to engage in civil immigration enforcement, assist in any manner with civil immigration enforcement, or allow any Department resources to be used in connection with civil immigration enforcement. Prohibited actions include, but are not limited to:
   a. Contacting federal civil immigration authorities to let them know where an individual is located;
   b. Detaining an individual so that federal civil immigration agents can take that person into custody;
   c. Facilitating street closures to enable civil immigration enforcement;
   d. Allowing Department facilities to be utilized in connection with civil immigration enforcement.

7. At the same time, members of service will not take any action that will interfere with or impede civil immigration enforcement undertaken by federal authorities. If an individual is subject to civil immigration enforcement by federal agents and asserts that such enforcement is based in error or is impermissible, that individual has legal recourse through immigration proceedings and in the courts. The Department does not take a position on who is properly subject to civil immigration enforcement.

8. To the extent federal immigration authorities are engaged in a civil enforcement operation and encounter individuals who are blocking or otherwise obstructing their activity, the federal authorities alone will take enforcement action consistent with their own rules and procedures. Members of service will

not assist with that enforcement action unless the individuals are engaged in conduct that, separate and apart from obstructing civil immigration enforcement, poses an immediate threat to public safety.

9. Should a federal civil immigration officer come under physical attack, members of service will act to protect that officer as they would any other person.

10. When speaking with crime victims, witnesses, suspects, or persons subject to enforcement action, including arrest, members of service are not to inquire regarding that person's immigration status except in the rare situations where that status is relevant to the criminal investigation at issue.

11. If a uniformed member of service encounters federal agents engaged in civil immigration enforcement, the uniformed member of service will immediately notify the desk officer who will notify the Operations Division. The Operations Division will then notify the duty chief, who will confer with the Legal Bureau and notify the Operations Division. The Operations Division will then inform the desk officer concerned.

12. Absent exigent circumstances, a uniformed member of service who encounters federal agents engaged in civil immigration enforcement is not to take any action unless an order to do so is given by an executive member of the Department on scene. That executive must consult with a Legal Bureau executive unless exigent circumstances make such a consultation impracticable.

13. The Operations Division is to monitor ICAD for radio runs regarding civil immigration enforcement. In such a circumstance, the Operations Division is to immediately notify the applicable commanding officer or duty captain, a Patrol Borough executive, and the Legal Bureau. The Communications Section will dispatch a patrol supervisor to the relevant location.

14. Should federal civil immigration agents present a member of service with papers to take an individual from Department custody, the member of service will immediately contact the Operations Division and an executive in the member of service's operational command. The Operations Division will notify the Legal Bureau. No individual is to be released from Department custody to civil immigration authorities without authorization from both an executive in the member of service's operational command and a Legal Bureau executive.

15. There are a small number of federal criminal laws in the Immigration and Nationality Act that provide for a criminal penalty because of a person's unlawful entry or reentry into the United States. The rules set forth in this operations order regarding civil immigration enforcement apply equally to those criminal laws. Otherwise, this operations order has no application to criminal investigations or criminal law enforcement.

16. Commanding officers will ensure the contents of this Order are brought to the attention of members of their commands.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**All Commands**