

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**Karen B. Selvin**
phone: (212) 356-2208
fax: (212) 356-2019
kselvin@law.nyc.gov

September 10, 2025

**VIA ECF**
Honorable Ramon E. Reyes, Jr.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re: <u>United States of America v. City of New York, et al.</u>, 1:25-cv-04084 (RER)

Dear Judge Reyes:

        We represent Defendants the City of New York (the "City"); Eric L. Adams, Mayor of the City of New York; the New York City Council; Adrienne E. Adams, Speaker of the New York City Council; the New York City Department of Correction; Lynelle Maginley-Liddie, Commissioner of the New York City Department of Correction; the New York City Department of Probation; Juanita N. Holmes, the Commissioner of the New York City Department of Probation; the New York City Police Department; and Jessica S. Tisch, Commissioner of the New York City Police Department (collectively, the "City Defendants").

        Pursuant to Section IV(A) of this Court's Individual Practice Rules, we write to request a pre-motion conference in anticipation of filing a Rule 12(b)(6) motion to dismiss the Complaint. Dkt. No. 1. In anticipation of this conference, City Defendants propose the following briefing schedule: City Defendants serve their motion on the United States of America ("Plaintiff") on October 15, 2025; Plaintiff serves its opposition papers on City Defendants on November 5, 2025; and City Defendants serve their reply, if any, on Plaintiff on December 5, 2025.[1]

---

[1] On September 9, 2025, City Defendants advised Plaintiff of our intent to file a pre-motion letter and proposed the above briefing schedule for the motion to dismiss. In response, Plaintiff stated that it did not believe proposing a briefing schedule was necessary at this time.

**Background**

This action is the latest in a series of affirmative lawsuits brought by the United States against states and municipalities to void longstanding sanctuary city laws and policies. The United States challenges several provisions of the New York City Administrative Code and a New York City Police Department Operations Order that limit the resources the City devotes to assisting with federal immigration enforcement. *See* New York City Administrative Code ("Admin. Code") §§ 9-131, 9-205, 10-178, 14-154, and New York City Police Department Operations Order 4 (collectively, the "Challenged Provisions"). Admin. Code §§ 9-131, 9-205, and 14-154 provide, in part, that the New York City Department of Correction, the New York City Department of Probation, and the New York City Police Department, respectively, may only honor an immigration detainer by holding a person beyond the time when such person would be released from custody if they are presented with a judicial warrant for the detention of such person and the person has been convicted of a violent or serious crime or is identified as a possible match in the terrorist screening database. Admin. Code § 10-178 prohibits City agencies from subjecting their officers or employees to the direction of the secretary of homeland security for the purposes of immigration enforcement and, further, prohibits the use of City resources or property for immigration enforcement. New York City Police Department Operations Order 4 provides operational guidance and serves as a reminder to Police Department personnel of city and state law, including Admin. Code § 10-178, which prohibits the use of City resources for immigration enforcement.

Plaintiff claims that the Challenged Provisions violate the Supremacy Clause of the United States Constitution in three ways. First, Plaintiff asserts federal law preempts the Challenged Provisions because they "interfere with federal law[] and create obstacles to the enforcement of federal immigration law both on their face and as applied to the [f]ederal [g]overnment." Compl. ¶ 106; *see also id.* at ¶¶ 89, 90, 94, 105. Second, Plaintiff asserts that the Challenged Provisions discriminate against the federal government. *See id.* at ¶¶ 99, 110. Finally, Plaintiff asserts that the Challenged Provisions unlawfully regulate the federal government. *See id.* at ¶¶ 101, 115.

For the reasons outlined below, each of Plaintiff's claims fails and is subject to dismissal.[2] Indeed, a district court recently dismissed a similar complaint brought by the government against Illinois, Cook County, and the City of Chicago, concluding that the government's preemption claims and intergovernmental immunity arguments lacked merit. *See United States v. Illinois*, No. 25-CV-1285, 2025 WL 2098688 (N.D. Ill. July 25, 2025). The same is true here.

**The Challenged Provisions Are Not Preempted By Federal Law (Count One)**

The Complaint fails to plausibly allege that federal law preempts the Challenged Provisions. There are three types of preemption—express, conflict, and field—but "all of them work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and

---

[2] City Defendants reserve the right to raise additional arguments for dismissal in full briefing on this matter.

therefore the federal law takes precedence and the state law is preempted." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018). None, however, are applicable to the Challenged Provisions.

First, Plaintiff's express preemption claim fails because the only statutes that it alleges expressly preempt the Challenged Provisions, 8 U.S.C. §§ 1373(a) and 1644, do not satisfy the private-actor requirement. On their face, sections 1373(a) and 1644 prohibit state and local government entities[3] from restricting the communication of "information regarding the citizenship or immigration status" of any "individual" (§ 1373(a)) or "alien in the United States" (§ 1644) with the Immigration and Naturalization Service (now the Department of Homeland Security). However, "*every* form of preemption is based on a federal law that regulates the conduct of private actors, *not* the States." *Murphy*, 584 U.S. at 479 (emphasis added) (rejecting the application of a preemption analysis to a federal statute that prohibited states from authorizing sports gambling). Accordingly, 8 U.S.C. §§ 1373(a) and 1644 cannot preempt state and local law, expressly or otherwise.

Second, there is no conflict preemption. Federal immigration law provides the City with the *option* of assisting federal immigration authorities but does not *require* such assistance. *See McHenry Cnty. v. Raoul*, 44 F.4th 581, 591–92 (7th Cir. 2022); *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019). The City is not bound by the government's "hope or expectation" of assistance. *McHenry Cnty.*, 44 F.4th at 592; *see also California*, 921 F.3d at 891 ("But when questions of federalism are involved, we must distinguish between expectations and requirements"). Moreover, each of the statutory provisions at issue expressly states that it does not stand in conflict with federal law. *See* New York City Admin. Code §§ 9-131(d); 9-205(d); 10-178(e); 14-154(d).

Third, to the extent the Complaint alleges that field preemption renders the Challenged Provisions "naturally preempted," this argument is unavailing. *See* Compl. ¶ 105. Under field preemption, a law is preempted where the federal regulatory framework is "so pervasive . . . that Congress left no room for the States to supplement it." *N.Y. State Telecomms. Ass'n v. James*, 101 F.4th 135, 147 (2d Cir. 2024) (citing *Arizona v. United States*, 567 U.S. 387, 399 (2012)). Here, however, the Challenged Provisions do not supplement or infringe upon the role of the federal government in immigration enforcement. Instead, the Challenged Provisions regulate only how local officials spend their limited resources. Because Congress has not occupied, and cannot occupy, the field of regulating the activities of local government employees, this claim must fail.

Finally, in advancing its baseless preemption claim, the federal government disregards the anticommandeering doctrine, rooted in the Tenth Amendment, that bars the federal government from conscripting municipal personnel and resources and from compelling municipalities to participate in federal immigration enforcement efforts. *See Murphy*, 584 U.S. at 470–71; *Printz v. United States*, 521 U.S. 898, 935 (1997); *New York v. United States*, 505 U.S. 144, 188 (1992).

---

[3] Section 1373's prohibition also applies to federal government entities.

**The Challenged Provisions Do Not Discriminate Against the Federal Government (Count Two)**

Count Two of the Complaint fails to plausibly allege that the Challenged Provisions unlawfully discriminate against the federal government. For Plaintiff to prevail on this claim, the Challenged Provisions must "singl[e] out the [f]ederal [g]overnment for unfavorable treatment." *United States v. Washington*, 596 U.S. 832, 839 (2022). Plaintiff must allege that the City treats another comparable class "better than it treats" the federal government. *Washington v. United States*, 460 U.S. 536, 537 (1983). Plaintiff, however, has not alleged how the Challenged Provisions treat some other entity more favorably than the federal government, *see* Compl. ¶¶ 99, 109, nor has it alleged any comparator. Simply put, the Challenged Provisions do not single out the federal government for unfavorable treatment because those same provisions do not place any other comparable class in a more favorable position than the federal government. Accordingly, this claim must fail.

**The Challenged Provisions Do Not Unlawfully Regulate the Federal Government (Count Three)**

Plaintiff's final claim that the Challenged Provisions unlawfully regulate the federal government fails because the Challenged Provisions have no bearing on how the federal government exercises its law enforcement duties. The Challenged Provisions merely limit local officials, in certain situations, from devoting resources to assist the federal government's immigration enforcement activities. *See, e.g.*, New York City Admin. Code §§ 9-131(b); 9-205(b). Plaintiff, however, casts the City's policy choices as regulations on the federal government. They are not. The Challenged Provisions regulate only the conduct of local officials, and they leave the responsibility for enforcing immigration law solely with the federal government. *See, e.g.*, *California*, 921 F.3d at 880; *Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 385 (D.N.J. 2020).

Respectfully submitted,

/s/
Karen B. Selvin
Andrew T. Steffan
Assistant Corporation Counsels

cc: All Counsel of Record (via ECF)