

U.S. Department of Justice
Civil Division

*Washington, DC 20044*

___

VIA ECF  September 17, 2025

Honorable Ramon E. Reyes, Jr.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States of America v. City of New York, et al.*, No. 1:25-cv-04084 (RER) (E.D.N.Y.)

Dear Judge Reyes:

Plaintiff United States of America submits this Response to Defendants' pre-motion conference request identifying anticipated bases for Federal Rule of Civil Procedure 12(b)(6) dismissal. ECF No. 12 (Letter).[1]

The United States brings this lawsuit to end New York City's longstanding efforts to thwart federal immigration enforcement. New York City's Sanctuary Provisions violate the Supremacy Clause and override Congress's explicit mandate that civil warrants are sufficient to take custody of removable aliens. Further, the Sanctuary Provisions impair federal detention of removable aliens, intentionally obstruct the sharing of critical information with immigration authorities, facilitate the release of dangerous criminals into the community, and endanger the public. Defendants claim the preemption and intergovernmental immunity claims lack merit. Letter at 2. But their dismissal motion should be denied for the following reasons, which Plaintiff will further expand upon in briefing.

**Federal Law Preempts New York City's Sanctuary Provisions (Count One)**

Federal law preempts the Sanctuary Provisions. Eight U.S.C. §§ 1373 and 1644 expressly preempt the Sanctuary Provisions. "Express preemption" occurs when Congress explicitly supersedes all state enactments in a particular area. *P. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983). In *City of New York v. United States*, the Second Circuit recognized that "[a]bsent any cooperation at all from local officials," the immigration system—like other federal programs—"may fail or fall short of [its] goals[.]" 179 F.3d 29, 35 (2d Cir. 1999). The Court rejected a facial challenge to §§ 1373 and 1644, finding that these statutes were valid, and holding that they overrode a City executive order restricting employees' ability to "transmit information respecting any alien to federal immigration authorities." *Id.* at 36–37.[2] Defendants simply ignore this binding

___

[1] Plaintiff opposes Defendants' proposed briefing schedule.
[2] Contrary to Defendants' claims, "§ 1373 is one provision of a larger statute, the INA, which certainly confers rights and places restrictions on large numbers of private persons" (*State of New York v. U.S. Dep't of Justice*, 951 F.3d 84, 114 n.27 (2d Cir. 2000)). And the Sanctuary Provisions' savings clauses offer no assistance. They allow employees to undertake otherwise barred activities "when required under federal law," N.Y.C. Admin. Code §§ 9-131(d) and 14-154(d), or to "comply[] with federal law," *id.* at § 10-178(e), but § 1373(a) does not *require* local governments to share and maintain that information, it only prohibits *restrictions* on those activities.

precedent in arguing that §§ 1373 and 1644 are not valid preemption provisions. Letter at 3.[3]

Additionally, the Sanctuary Provisions are conflict-preempted. Implied "conflict preemption" occurs when a party cannot comply with both state law and federal law, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963), or when the state law creates an obstacle to a federal statutory purpose, *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). Both forms of conflict preemption exist here. For instance, the Sanctuary Provisions bar City employees from allowing federal immigration authorities to access and interview aliens in City custody. N.Y.C. Admin. Code §§ 9-131(h), 10-178(c)). But federal law authorizes federal authorities to interrogate any alien, even those in local custody. 8 U.S.C. § 1357(a)(1); *see also id.* § 1225(a)(3) (aliens "shall be inspected by immigration officers"). Simultaneous compliance with the Sanctuary Provisions and federal law is impossible.

And the Sanctuary Provisions create obstacles to federal immigration enforcement. For example, New York City only allows its Department of Correction to honor an immigration detainer when: 1) there is a judicial warrant, and 2) the person was convicted of an enumerated crime within a certain timeframe. N.Y.C Admin. Code § 9-131(b)(1). These carve outs obstruct federal immigration enforcement apprehension, prosecution, and removal priorities and practices—as embodied in 8 U.S.C. §§ 1226 and 1231—which establish a system of civil administrative warrants for immigration arrest and removal, and do not require judicial warrants. *See Arizona v. United States*, 567 U.S. 387, 406 (2012) ("a state law to the contrary is an obstacle to the regulatory system Congress chose").

Moreover, the Sanctuary Provisions are field-preempted. Implied "field preemption" occurs when a "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room to supplement it," *P. Gas & Elec. Co.*, 461 U.S. at 203–04, or where the "federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Defendants do not contest that Congress intended the federal government to occupy the field of immigration. They instead assert the Sanctuary Provisions only regulate local officials and do not infringe on the federal government's role in immigration enforcement. Letter at 3. Beyond being demonstrably false, this claim defies Supreme Court precedent "emphasiz[ing] the importance of considering the target at which the state law aims in determining whether that law is pre-empted" (*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 385 (2015)). The Sanctuary Provisions explicitly, exclusively, and repeatedly target "federal immigration authorities" (*e.g.*, N.Y.C. Admin. Code § 9-205(b); *id.* at §§ 9-131(a), (b), (h); *id.* at §§ 14-154(a), (b)) and "immigration enforcement" (*id.* at §§ 10-178(a), (b), (d))—rebutting the notion that the Sanctuary Provisions' aim is only to regulate local resources.

Lastly, Defendants' anti-commandeering argument is unavailing in light of controlling law. In *City of New York*, the Second Circuit rejected a Tenth Amendment challenge to §§ 1373 and 1644 because it "asks us to turn the Tenth Amendment's shield against the federal government's using state and local governments to enact and administer federal programs into a sword allowing states and localities to engage in passive resistance that frustrates federal programs." 179 F.3d at 35. And in *State of New York*, it found: "it is doubtful that States have reserved the power to adopt … immigration policies *contrary* to those preferred by the federal government" and set forth in statutes such as § 1373. *Id.* at 113 (internal quotations and citation omitted). New York City explicitly bars its employees from voluntarily cooperating with federal immigration enforcement. *E.g.*, N.Y.C. Admin. Code § 10-178(c);

---

[3] Tellingly, *United States v. Illinois*, which held §§ 1373 and 1644 are not valid preemptive provisions, also neglects to acknowledge *City of New York*. No. 25-CV-1285, 2025 WL 2098688, at *13, 18 (N.D. Ill. July 25, 2025).

NYPD Ops. Order No. 4 at ¶ 6. Far from "compelling" participation, Letter at 3, Plaintiff only seeks to end New York City's illegal obstruction of its enforcement of immigration law. *See City of New York*, 179 F.3d at 35 ("states do not retain under the Tenth Amendment an untrammeled right to forbid all voluntary cooperation by state or local officials with particular federal programs").

**New York City Unlawfully Discriminates Against the Federal Government (Count Two)**

The Sanctuary Provisions unlawfully discriminate against the federal government by singling out "federal immigration authorities" (*e.g.*, N.Y.C. Admin. Code § 9-205(b); *id.* at §§ 9-131(a), (b), (h); *id.* at §§ 14-154(a), (b)) for unfavorable treatment. The intergovernmental immunity doctrine prohibits States from discriminating against the federal government, or even just a part of it. *See North Dakota v. United States*, 495 U.S. 423, 435–36 (1990). State laws that uniquely *burden* federal activities violate this rule. The Sanctuary Provisions treat federal immigration authorities less favorably than the general public and city, state, and non-immigration federal law enforcement agencies. *See id.* at 438. Because only "federal immigration authorities" have the power to carry out civil immigration enforcement, there can be no "similarly situated" entity. Essentially, Defendants have drafted the Sanctuary Provisions so narrowly as to render "similarly situated" parties meaningless, since the law singles out and discriminates exclusively against federal immigration authorities. If the only difference justifying the discriminatory treatment is the federal agency's enforcement of a particular federal law, the discrimination is clear. *See City of New York*, 179 F.3d at 36–37.

**The Sanctuary Provisions Unlawfully Regulate the Federal Government (Count Three)**

Defendants unpersuasively contend that the Sanctuary Provisions only regulate the conduct of local officials. Courts have recognized that laws can regulate the federal government although they appear to regulate others. *See, e.g.*, *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 325 (3d Cir. 2025); *United States v. King Cnty.*, 122 F.4th 740, 757 (9th Cir. 2024). The Sanctuary Provisions bar honoring civil detainers and warrants that Congress has expressly authorized and they require federal immigration authorities to obtain a judicial warrant to take custody of a detained alien. *E.g.*, N.Y.C. Admin. Code § 14-154(b). They thus foreclose federal immigration officials' use of the congressionally authorized detention methods and impose a different method, with more burdensome requirements, directly regulating the federal government. *See Perez v. Campbell*, 402 U.S. 637, 652 (1971). Likewise, by denying federal immigration authorities access to state and local facilities, the Sanctuary Provisions regulate the federal government's mandate to inspect aliens in the U.S. (8 U.S.C. § 1225(a)(3)). N.Y.C. Admin. Code § 9-131(h). They also limit the circumstances when federal immigration authorities may interrogate aliens (*id.*), even though Congress has not set such a limit. *See* 8 U.S.C. § 1357(a)(1).

| | |
|---|---|
| cc: All Counsel of Record (via ECF) | Respectfully Submitted, |
| BRETT A. SHUMATE<br>Assistant Attorney General<br>DREW C. ENSIGN<br>Deputy Assistant Attorney General<br>CHARLES E.T. ROBERTS<br>Counsel to the Assistant Attorney General<br>Civil Division<br>ELIANIS N. PEREZ<br>Assistant Director | /s/ Catherine M. Reno<br>CATHERINE M. RENO<br>Senior Litigation Counsel<br>SUSAN ANSARI<br>Trial Attorney<br>United States Department of Justice<br>Civil Division<br>Office of Immigration Litigation<br>*Attorneys for the United States* |