UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

UNITED STATES OF AMERICA,

                                                Plaintiff,

            -against-

                                                            No.: 1:25-cv-04084 (RER)(PK)


CITY OF NEW YORK; ERIC ADAMS, Mayor of The
City of New York, in his official capacity; NEW YORK
CITY COUNCIL; ADRIENNE E. ADAMS, Speaker of the
New York City Council, in her official capacity; NEW
YORK CITY DEPARTMENT OF CORRECTION;
LYNELLE MAGINLEY-LIDDIE, Commissioner of the
New York City Department of Correction, in her official
capacity; NEW YORK CITY DEPARTMENT OF
PROBATION; JUANITA N. HOLMES, Commissioner of
the New York City Department of Probation, in her official
capacity; NEW YORK CITY POLICE DEPARTMENT;
JESSICA S. TISCH, Commissioner of the New York City
Police Department, in her official capacity,

                                                Defendants.


------------------------------------------------------------------------x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT


**STEVEN BANKS**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007



February 23, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT........................................................................................................................ 1

    I. PLAINTIFF CANNOT ESTABLISH A VALID PREEMPTION CLAIM.................... 1

        A. Sections 1373 and 1644 Regulate Government Actors Only............................ 2

        B. No Conflict Preemption Exists Because the INA Preserves the City's Right
           to Decline Cooperation ..................................................................................... 4

        C. The Field Preemption Argument is Both Forfeited and Meritless as the INA
           Does Not Occupy the Field of Local Resource Allocation................................ 6

    II. PLAINTIFF'S INTERGOVERNMENTAL IMMUNITY CLAIMS FAIL BECAUSE
      THE CHALLENGED PROVISIONS DO NOT DISCRIMINATE AGAINST OR
      REGULATE THE FEDERAL GOVERNMENT............................................................. 8

        A. The Challenged Provisions Do Not Regulate the Federal Government ............ 9

        B. Plaintiff's Discrimination Claim Fails Because It Has Not Alleged a
           Comparator ..................................................................................................... 11

    III. THE ANTICOMMANDEERING DOCTRINE BARS PLAINTIFF FROM
       COMPELLING THE CITY TO ADMINISTER ITS IMMIGRATION
       PROGRAM..................................................................................................................... 14

CONCLUSION.................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Arizona v. California*,
283 U.S. 423 (1931)..............................................................................................10

*Boeing Co. v. Movassaghi*,
768 F.3d 832 (9th Cir. 2014) ...............................................................................10

*Chamber of Comm. of the U.S. v. Whiting*,
563 U.S. 582 (2011)................................................................................................5

*City of El Cenizo, Texas v. Texas*,
890 F.3d 164 (5th Cir. 2018) .............................................................................6, 7

*City of New York v. United States*,
179 F.3d 29 (2d Cir. 1999) .........................................................................2, 4, 14

*City of Philadelphia v. Sessions*,
309 F. Supp. 3d 289 (E.D. Pa. 2018) .....................................................................3

*Cnty. of Ocean v. Grewal*,
475 F. Supp. 3d 355 (D.N.J. 2020) .........................................................................3

*Colorado v. United States DOJ*,
455 F. Supp. 3d 1034 (D. Colo. 2020)....................................................................3

*CoreCivic, Inc. v. Governor of N.J.*,
145 F.4th 315 (3d Cir. 2025) .........................................................................10, 11

*Dawson v. Steager*,
586 U.S. 171 (2019)..............................................................................................12

*De Canas v. Bica*,
424 U.S. 351 (1976)................................................................................................7

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992)..................................................................................................5

*Geo Grp., Inc. v. Newsom*,
50 F.4th 745 (9th Cir. 2022) .........................................................................10, 11

*Goldin v. Baker*,
809 F.2d 187 (2d Cir. 1987) .................................................................................11

*Goldstein v. California*,
    412 U.S. 546 (1973) ................................................................................................... 4

*Hancock v. Train*,
    426 U.S. 167 (1976) ............................................................................................... 8, 9

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) ..................................................................................................... 5

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*,
    921 F. Supp. 2d 197 (S.D.N.Y. 2013) ...................................................................... 6

*Kansas v. Garcia*,
    589 U.S. 191 (2020) ................................................................................................... 4

*Leslie Miller, Inc. v. Arkansas*,
    352 U.S. 187 (1956) ................................................................................................. 10

*McHenry Cnty. v. Raoul*,
    44 F.4th 581 (7th Cir. 2022) ............................................................................. *passim*

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ................................................................................................... 2

*Murphy v. NCAA*,
    584 U.S. 453 (2018) ................................................................................... 2, 3, 4, 14

*N.Y. Pet Welfare Ass'n v. City of New York*,
    850 F.3d 79 (2d Cir. 2017) ........................................................................................ 4

*Nat'l Meat Ass'n v. Harris*,
    565 U.S. 452 (2012) ................................................................................................... 4

*New York v. U.S. Dep't of Justice*,
    951 F.3d 84 (2d Cir. 2020) .................................................................................. 3, 14

*New York v. United States*,
    505 U.S. 144 (1992) ................................................................................................. 14

*North Dakota v. United States*,
    495 U.S. 423 (1990) ......................................................................................... 9, 11, 12

*Oneok, Inc. v. Learjet, Inc.*,
    575 U.S. 373 (2015) ................................................................................................... 7

*Printz v. United States*,
    521 U.S. 898 (1997) ........................................................................................... 14, 15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023).................................................................................................. 10

*Texas v. U.S. Dep't of Homeland Sec.*,
  123 F.4th 186 (5th Cir. 2024) .................................................................................... 9

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ............................................................................. 5, 6, 15

*United States v. Illinois*,
  796 F. Supp. 3d 494 (N.D. Ill. 2025) ................................................................. *passim*

*United States v. King Cnty.*,
  122 F.4th 740 (9th Cir. 2024) .............................................................................. 10, 11

*United States v. Missouri*,
  114 F.4th 980 (8th Cir. 2024) ..................................................................................... 5

*United States v. New York*,
  No.1:25-cv-00205, 2025 U.S.Dist. LEXIS 264764 (N.D.N.Y. Dec. 23, 2025) .............. 6, 8, 12

*United States v. New York*,
  No.1:25-cv-00744, 2025 U.S.Dist. LEXIS 225875 (N.D.N.Y. Nov. 17, 2025)................ *passim*

*United States v. Washington,*
  596 U.S. 832 (2022)........................................................................................ 8, 11, 12

*United States v. Williams*,
  701 F. Supp. 3d 257 (S.D.N.Y. 2023) ...................................................................... 14

*Washington v. United States,*
  460 U.S. 536 (1983)............................................................................................ 12, 13

**Statutes**

8 U.S.C. § 1357(g) ......................................................................................................... 6, 7

8 U.S.C. § 1373............................................................................................................... 1, 2

8 U.S.C. § 1644............................................................................................................... 1, 2

49 U.S.C. § 41713(b) ........................................................................................................ 2

**New York City Administrative Code**

Admin. Code § 9-131(a)(4)............................................................................................... 13

**PRELIMINARY STATEMENT**

Plaintiff's opposition does not salvage the federal government's unavailing preemption and intergovernmental immunity claims. In support of its preemption claim, Plaintiff advances a strained statutory interpretation that disregards the fact that Sections 1373 and 1644 of the Immigration and Nationality Act ("INA") expressly and unambiguously apply to government entities and officials, as opposed to regulating a specific set of private actors—here, immigrants— and therefore lack preemptive effect. Moreover, Plaintiff's demand that the City assist with immigration enforcement does not create an irresolvable conflict. As for its intergovernmental immunity claims, in its effort to improperly conscript City personnel into its abusive immigration enforcement scheme, Plaintiff promotes a legal theory that was rejected long ago by the Supreme Court. And even if these arguments could prevail, the Tenth Amendment bars such conscription. Here, as in other jurisdictions, Plaintiff's arguments fail. This Court should grant Defendants' motion to dismiss.

**ARGUMENT**

**I.     PLAINTIFF CANNOT ESTABLISH A VALID PREEMPTION CLAIM**

Plaintiff argues each form of preemption but to no avail. Neither 8 U.S.C. §§ 1373 nor 1644 expressly preempt New York City Administrative Code §§ 9-131, 9-205, 10-178, 14-154, and NYPD Operations Order 4 ("Challenged Provisions") because neither federal law is a valid preemption statute. There is no conflict preemption for the simple reason that the INA does not require local law enforcement participation in immigration enforcement. And even assuming Plaintiff's field preemption argument was properly before this Court, the Challenged Provisions regulate local law enforcement alone, a field not occupied by the INA.

**A.      Sections 1373 and 1644 Regulate Government Actors Only**

In defending its express preemption claim, Plaintiff offers two meritless arguments and a reading of *City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999), that is incompatible with the analytical framework for preemption claims established by the Supreme Court in *Murphy v. NCAA*, 584 U.S. 453 (2018).

First, Plaintiff claims that Sections 1373 and 1644 "govern the actions of private individuals: aliens." Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss, dated January 21, 2026, ("Opp.") at 20. Yet, neither Section 1373 nor 1644 say anything about what noncitizens can and cannot do, and Plaintiff offers no theory whatsoever for how these provisions regulate noncitizens. While the Supreme Court in *Murphy* explained that Congress need not employ any "particular linguistic formulation" to preempt state and local laws, it repeatedly affirmed that a federal statute must regulate private actors to have preemptive effect. *Murphy*, 584 U.S. at 477, 478–80. By their very terms, Sections 1373 and 1644 apply solely to governmental actors. Section 1373 forbids federal, state, or local officials from imposing information-sharing restrictions on "any government entity or official." Section 1644, phrased in the passive voice, prevents "State and local government entit[ies]" from being prohibited or restricted from sharing information with the Department of Homeland Security.

Plaintiff's attempt to analogize these two statutes with the section of the Airline Deregulation Act ("ADA") entitled "preemption," 49 U.S.C. § 41713(b), addressed in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), is off base. Opp. at 19–20. The ADA bars states from enacting laws related to *air carriers*' "price, route, or service." 49 U.S.C. §§ 41713(b)(1), (b)(4)(A). Air carriers are private actors—government entities and officials are not. As the Supreme Court in *Murphy* noted, the ADA's provision had preemptive effect because it provided

- 2 -

"private entities (i.e., covered carriers) a federal right to engage in certain conduct subject only to certain (federal) constraints" via its prohibition against states regulating air carriers. *Murphy*, 584 U.S. at 478–79. On the other hand, in both "language or effect," Sections 1373 and 1644 do not "create or restrict the rights of any private actor" and have routinely been found to lack preemptive effect. *United States v. Illinois*, 796 F. Supp. 3d 494, 521–22 (N.D. Ill. 2025); *see also Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 372 (D.N.J. 2020), *aff'd sub nom.*, *Ocean Cnty. Bd. of Comm'rs v. Attorney General of N.J.*, 8 F.4th 176 (3d Cir. 2021); *Colorado v. United States DOJ*, 455 F. Supp. 3d 1034, 1059 (D. Colo. 2020); *City of Philadelphia v. Sessions,* 309 F. Supp. 3d 289, 331–32 (E.D. Pa. 2018), *aff'd in part, vacated in part on other grounds sub nom.*, *City of Philadelphia v. Att'y Gen. of the U.S.,* 916 F.3d 276 (3d Cir. 2019).

Second, Plaintiff's attempt to rescue its express preemption claim by arguing the entire INA "as a whole regulates private actors," Opp. at 20, should be rejected. Aside from the fact that this argument is not reflected in the Complaint, which cites to Sections 1373 and 1644 only as the basis for the claim, *see* Compl. ¶ 105, Plaintiff asks the Court to disregard the plain text of those two statutes which clearly applies only to governmental actors, as well as countervailing case law.[1] Instead, Plaintiff urges this Court to rely on one line of *dicta* contained in a footnote in *New York v. U.S. Dep't of Justice*, 951 F.3d 84, 114 n.27 (2d Cir. 2020), that stated the INA "confers rights and places restrictions on large numbers of private persons." Yet, as noted in Defendants' opening brief, *New York* addressed a Tenth Amendment challenge as applied to the federal government's

---

[1] This includes *Illinois*, which rejected this same argument by Plaintiff, finding that it "would allow Congress to smuggle unconstitutional commands to States into specific provisions of a broader statute, and then rely on separate provisions for cover." 796 F. Supp. 3d at 521–22.

- 3 -

authority under the Spending Clause to place terms on federal grants—*not* the preemptive effect of Sections 1373 and 1644.[2] Therefore, Plaintiff's reliance on this case is misplaced.

Finally, Plaintiff cites *City of New York v. United States* (2d Cir. 1999) to support the proposition that Sections 1373 and 1644 are "facially valid." Opp. at 18–19. Yet, as noted in Defendants' opening brief, the rationale underlying that case was abrogated by *Murphy*. Thus, contrary to Plaintiff's assertion, *City of New York* does not "control" here.

### B.   No Conflict Preemption Exists Because the INA Preserves the City's Right to Decline Cooperation

Plaintiff fails to show how the alleged conflict between the Challenged Provisions and federal law is "so direct and positive that the two…cannot be reconciled or consistently stand together," *N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 87 (2d Cir. 2017) (citations omitted). Indeed, Plaintiff's allegations amount to nothing more than frustration that it may be easier for the federal government to pursue its immigration enforcement priorities if the City would assist its efforts. Yet "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for [conflict] preemption." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020)*; see also Goldstein v. California*, 412 U.S. 546, 555 (1973) (the "mere possibility of inconvenience in the exercise of [a state or locality's] powers" does not give rise to conflict preemption).

Plaintiff's suggestion that, while "[l]ocalities are not obligated to participate in federal programs," they cannot implement a "bar on such cooperation," is nonsensical and unsupported. Opp. at 25.[3] A city undisputedly has authority not to participate in immigration enforcement, and

---

[2] In the same footnote that Plaintiff cites, the Second Circuit expressly declined to address the preemptive effect of Section 1373.

[3] Plaintiff's reliance on *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 460 (2012), Opp. at 25, is misguided. *Nat'l Meat Ass'n* was an express preemption case with a "widely" "sweep[ing]" preemption clause that "prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the [Federal Meat Inspection] Act." 565 U.S. at 459–60. The holding is not applicable to a conflict preemption analysis.

there is no legal or factual distinction between a city determining not to participate in a federal program and effectuating that choice by prohibiting the use of its local resources or, alternatively, by prohibiting its employees and officers from such participation in their official capacity. Municipal participation is voluntary and the decision "not to assist federal immigration enforcement" "is not an 'obstacle' to that enforcement effort." *United States v. California*, 921 F.3d 865, 888 (9th Cir. 2019) (citation omitted).[4]

For example, Defendants' determination not to honor detainer requests except upon presentation of a judicial warrant and for individuals convicted of a crime within the last five years (unless that person is a suspected terrorist), does not in any way stop the federal government from arresting and detaining these persons once they have been released from the City's custody. It is understood, even by Plaintiff, that detainers are simply "requests." Compl. ¶¶ 9, 10, 30, 57, 86. Yet, Plaintiff asks this Court to find that the Challenged Provisions somehow impede "the accomplishment and execution of the full purposes and objectives of Congress." Opp. at 22–23 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). This flies in the face of Supreme Court precedent that notes that a conflict preemption analysis "does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts that preempts state law.'" *Chamber of Comm. of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 111 (1992)).

---

[4] Plaintiff's citation to *United States v. Missouri*, 114 F.4th 980, 986 (8th Cir. 2024) is inapposite. Opp. at 23–24 n.18. *Missouri* involved a state law that refused to recognize certain federal firearm regulations. *Missouri*, 114 F.4th at 983. The Challenged Provisions here do nothing of the sort. They regulate only the City's own participation in federal immigration efforts and contain no provision purporting to reject or invalidate federal law. Notably, the *Missouri* court explicitly stated that "Missouri may lawfully withhold its assistance from federal law enforcement." *Id.* at 986.

Furthermore, Plaintiff's argument that Congress intended states and localities to participate in federal immigration enforcement is of no moment because the INA codifies the *option* for such participation. *See* 8 U.S.C. §§ 1357(g)(1), (9), (10). "[T]he choice of a state to refrain from participation [in immigration enforcement] cannot be invalid under the doctrine of obstacle preemption where, as here, it retains the right of refusal." *California*, 921 F.3d at 890; *see also McHenry Cnty. v. Raoul*, 44 F.4th 581, 591–92 (7th Cir. 2022); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 179–81 (5th Cir. 2018); *United States v. New York*, No. 1:25-cv-00205, 2025 U.S. Dist. LEXIS 264764, at *20–21 (N.D.N.Y. Dec. 23, 2025) ("*New York II*"); *Illinois,* 796 F. Supp. 3d at 529, 531, 533. The Challenged Provisions exercise the City's option to decline to participate in immigration enforcement.

### C.    The Field Preemption Argument is Both Forfeited and Meritless as the INA Does Not Occupy the Field of Local Resource Allocation

As noted in Defendants' opening brief, the Complaint contains one fleeting reference to "occupy[ing] the field" in paragraph 105, but never identifies the field. Plaintiff now attempts, through its opposition, to improperly amend its Complaint to claim that the field is the "apprehension and detention of aliens." Opp. at 21. This tardy attempt to save its field preemption claim from dismissal is not permitted. *See K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.").

Even if this Court were to consider Plaintiff's newfound field preemption argument, it cannot be credited. Plaintiff mischaracterizes the Challenged Provisions as part of an alleged "alien apprehension and detention regime" that the City has "enacted and advanced" against the federal government. Opp. at 22. But the City has no such regime. The Challenged Provisions instead

- 6 -

regulate the City's use of its own resources—and it is the federal government that is responsible for immigration enforcement, not Defendants.

Plaintiff's field preemption claim also fails because the federal government cannot demonstrate that the "complete ouster of state power—including state power to promulgate laws not in conflict with federal laws—was the clear and manifest purpose of Congress…." *De Canas v. Bica*, 424 U.S. 351, 357 (1976) (cleaned up), *superseded by statute*, Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, *as recognized in Arizona v. United States*, 567 U.S. 387, 404 (2012). The INA gives localities the option to participate in immigration enforcement. *See, e.g.*, 8 U.S.C. §§ 1357(g)(1), (9) (allowing localities to enter into agreements to carry out the investigation, apprehension, or detention of noncitizens but affirming that "[n]othing in this subsection shall be construed to require any…political subdivision of a State to enter into an agreement with the Attorney General under this subsection); *see also McHenry Cnty.*, 44 F.4th at 590–91; *City of El Cenizo*, 890 F.3d at 178 (finding that federal law has not occupied the field regarding localities' ability to determine if they will participate in immigration enforcement).

Finally, Plaintiff's reliance on *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015), to argue that in conducting a field preemption analysis courts should look to the "target" of state and local laws, is misplaced. Opp. at 22. The Supreme Court cabined its analysis in *Oneok* to "pre-emption in the natural gas context." 575 U.S. at 385–87, 391. Moreover, it reasoned that, "where…a state law can be applied to [sales regulated by the Natural Gas Act and those outside of it], we must proceed cautiously, finding pre-emption only where detailed examination convinces us that a matter falls within the preempted field *as defined by our precedents*." *Id.* at 385 (emphasis added). The Supreme Court then proceeded to discuss existing precedents within the natural gas context and rejected the field preemption claim. Even if *Oneok* were applicable (which it is not), Plaintiff

points to no such precedent instructing courts to look at the target of local laws that may incidentally touch on immigration enforcement. And, regardless, as is plain from their text, the Challenged Provisions do not seek to "target" the immigration and naturalization of noncitizens—instead they seek to regulate City personnel and resources only, as part of the City's historic police powers.

## II.   PLAINTIFF'S INTERGOVERNMENTAL IMMUNITY CLAIMS FAIL BECAUSE THE CHALLENGED PROVISIONS DO NOT DISCRIMINATE AGAINST OR REGULATE THE FEDERAL GOVERNMENT

Plaintiff's intergovernmental immunity claims rest on a fundamental misreading of settled Supreme Court precedent. The modern doctrine is narrow and precise: it prohibits state laws that either (1) directly regulate the federal government or (2) discriminate against it. *United States v. Washington* ("*Washington II*"), 596 U.S. 832, 838 (2022). The doctrine does not—and cannot—prohibit state or local laws that only incidentally affect federal operations. *Hancock v. Train*, 426 U.S. 167, 179 (1976) ("Neither the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch the activities of the [f]ederal [g]overnment.").

Plaintiff invites this Court to adopt instead an effects-based test that the Supreme Court expressly rejected decades ago. Every district court that has considered Plaintiff's theories in this wave of sanctuary-city litigation has declined the invitation. Federal courts in New York and Illinois dismissed nearly identical claims, holding that state policies limiting voluntary cooperation with federal immigration enforcement neither regulate nor discriminate against the federal government. *New York II*, 2025 U.S. Dist. LEXIS 264764, at *9–11; *United States v. New York*, No. 1:25-cv-00744, 2025 U.S. Dist. LEXIS 225875, at *17–*19 (N.D.N.Y. Nov. 17, 2025) ("*New York I*"); *Illinois*, 796 F. Supp. 3d at 533–36. This Court should do the same.

**A.      The Challenged Provisions Do Not Regulate the Federal Government**

Plaintiff's theory that the Challenged Provisions impermissibly regulate the federal government because they make immigration enforcement more difficult by requiring federal agents "to meet layers of additional requirements," directly contradicts binding Supreme Court precedent. Opp. at 9. Indeed, even indirect regulation, which the Challenged Provisions are not, does not satisfy the intergovernmental immunity doctrine. *See North Dakota v. United States*, 495 U.S. 423, 434–35 (1990) (plurality opinion). The Supreme Court has "thoroughly repudiated" the view that "any state regulation which indirectly regulates the [f]ederal [g]overnment's activity is unconstitutional." *Id.* at 434. Moreover, the Constitution does not prohibit local laws that merely affect federal operations. *See Hancock*, 426 U.S. at 179; *see also Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 206 (5th Cir. 2024).

None of the Challenged Provisions directs the conduct of federal officers or agencies. Nor do they limit the federal government's ability to contract with private parties. Their plain text applies solely to the conduct of City agencies and officials, detailing the circumstances in which *City officials* may spend time and resources assisting the federal government with immigration enforcement. They do not tell federal agents whom they may arrest or what tools they may use. Because the Challenged Provisions "simply decline to ease the [federal government's] burden of civil immigration enforcement," they cannot violate the intergovernmental immunity doctrine. *Illinois*, 796 F. Supp. 3d at 534.

The Northern District of New York rejected Plaintiff's identical argument against the State of New York, holding that state policies limiting cooperation with federal immigration enforcement "[are] not attempting to regulate federal agents and [are] not prohibiting the federal government from enforcing immigration law." *New York I*, 2025 U.S. Dist. LEXIS 225875, at *17.

- 9 -

The court explained that because "these provisions apply to state-owned facilities, New York 'is acting as a proprietor, not a regulator,'" by "simply defining, as a proprietor, what activities are not permissible in state-owned facilities." *Id.* (quoting *Texas*, 123 F.4th at 205); *see also Illinois*, 796 F. Supp. 3d at 535 (rejecting the intergovernmental immunity argument where challenged policy "controls the actions of [state's] own agents and agencies" and does not impose "'direct regulation on any federal official or agency'") (quoting *McHenry Cnty.*, 44 F.4th at 593). The same is true here.

Plaintiff's citations to *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956), *Arizona v. California*, 283 U.S. 423 (1931), and *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) are inapposite. Opp. at 9–10, 13. *Leslie* involved a state law that gave the state the power of review over the federal government's selection of private contractors. *Arizona* and *Students for Fair Admissions* have nothing to do with intergovernmental immunity: *Arizona* dealt only with preemption, and *Students for Fair Admissions* considered whether race-conscious admissions were lawful under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff fails to explain how these cases have any bearing here.

Plaintiff also relies on *Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014), *Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022), *United States v. King Cnty.*, 122 F.4th 740 (9th Cir. 2024), and *CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315 (3d Cir. 2025). Opp. at 8–14, 16–17. However, these decisions are all distinguishable in a fundamental way: each involved state laws that directly regulated the ability of the federal government or its agents to contract with private parties. *Boeing Co.* involved a state law that compelled the federal government and its private contractors to take more stringent measures in cleaning up radioactive contamination by defining "the environmental sampling that is required, the cleanup procedures to be used, and the

- 10 -

money and time that [would] be spent." 768 F.3d at 839. *Geo Grp.* and *CoreCivic* addressed state laws that prohibited the federal government from contracting with private detention facilities in California and New Jersey. 50 F.4th at 752; 145 F.4th at 320. *King Cnty.* involved a state law that prevented federal government contractors from using an airfield to operate deportation flights. 122 F.4th at 756.

By contrast, the Challenged Provisions do not apply any requirement to the federal government or its agents—they apply only to the City itself. This distinction is critical. As the *Illinois* court recognized, laws that restrict the ability of private parties to contract with the federal government raise different concerns than laws that simply limit a state or local government's own participation in federal programs. 796 F. Supp. 3d at 535. The former give states the "power of review" over the federal government's decisions, while the latter "do not comparably regulate [the federal government] or meddle with the contractual rights of private individuals working with [the federal government]." *Id.* (distinguishing *Geo Grp.* and *King Cnty.*).

The Supreme Court and Second Circuit have long held that a mere effect on the federal government is not sufficient to implicate intergovernmental immunity. *See North Dakota*, 495 U.S. at 435; *Washington II*, 596 U.S. at 838–39; *Goldin v. Baker*, 809 F.2d 187, 191 (2d Cir. 1987). The Third Circuit's effects-based approach in *CoreCivic* contradicts that binding authority. This Court should thus decline to adopt the effects-based approach advanced by Plaintiff.

### B.     Plaintiff's Discrimination Claim Fails Because It Has Not Alleged a Comparator

Plaintiff's discrimination claim fails for an independent reason: it does not identify a similarly-situated comparator and instead argues that laws that "facially target federal immigration authorities" are discriminatory *per se*. Opp. at 14. That is not the law.

Discrimination under intergovernmental immunity turns on whether the federal government is treated worse than similarly situated non-federal actors, not whether a law addresses a federal subject. The Supreme Court has made this clear: "The State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *Washington v. United States* ("*Washington I*"), 460 U.S. 536, 544–45 (1983); *see also Dawson v. Steager*, 586 U.S. 171, 177 (2019).

Every district court to consider this question has held that the United States must allege a similarly situated non-federal comparator to adequately allege a discrimination claim. *See New York I*, 2025 U.S. Dist. LEXIS 225875, at *17 ("[A] comparator is necessary; 'the mere fact that the [state law] touches on an exclusively federal sphere is not enough to establish discrimination.'") (alteration in original) (quoting *McHenry Cnty.*, 44 F.4th at 594); *New York II*, 2025 U.S. Dist. LEXIS 264764, at *10 (dismissing discrimination claim where "the [c]omplaint fails to identify any such comparator"); *Illinois*, 796 F. Supp. 3d at 533 (same). Plaintiff has not done so here.

Plaintiff attempts to eliminate the comparator requirement altogether by suggesting that a comparator is unnecessary where the federal government is uniquely regulated or singled out. Opp. at 14–15. That position is irreconcilable with Supreme Court precedent, which makes comparative treatment the core inquiry. *See Washington I*, 460 U.S. at 541–42; *North Dakota*, 495 U.S. at 438; *Washington II*, 596 U.S. at 833; *Dawson*, 586 U.S. at 177.

Plaintiff argues that because *Washington I* and *North Dakota* involved regulatory schemes that treated the federal government better than non-federal actors, Plaintiff need not plead a comparator for its discrimination claim. Opp. at 17. That is a logical fallacy. The analytical underpinning of *Washington I* and *North Dakota* clearly depends on a comparison with a similarly

situated non-federal actor. *Washington I*, 460 U.S. at 541–42; *North Dakota*, 495 U.S. at 438; *see also Dawson*, 586 U.S. at 177 (discrimination depends on "treat[ing] similarly situated state and federal [entities] differently"); *Illinois*, 796 F. Supp. 3d at 534 ("For a state law to unconstitutionally discriminate against the federal government, it must treat comparable classes of federal and *non-federal* employees differently, not different classes of federal employees.") (emphasis in original).

Moreover, the fact that a comparator may not exist does not eliminate the requirement to show one. *New York I*, 2025 U.S. Dist. LEXIS 225875, at *17–*18 (holding that "a comparator is necessary" even if "[i]t is unlikely that a comparator exists, for the United States concedes that only the federal government is authorized to enforce civil immigration law"). The fact that a law "affects an exclusively federal domain is not evidence of discrimination, and failure to identify a comparator ends the inquiry." *Id.* (citing *McHenry Cnty.*, 44 F.4th at 594 and *Washington I*, 460 U.S. at 544–45).[5]

---

[5] Plaintiff suggests that the Challenged Provisions "themselves provide several [comparators]"—namely, law enforcement officers, federal or otherwise, who are not engaged in immigration enforcement. Opp. at 18. Yet, Plaintiff still fails to identify a non-federal actor that is treated better than the federal government—it merely identifies that federal actors performing some functions are treated differently than federal actors performing others. This is insufficient. *See Washington I*, 460 U.S. at 544–45 ("The State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them."); *McHenry Cnty.*, 44 F.4th at 594 (same). Plaintiff's assertion that state and local criminal law enforcement officers are treated more favorably than federal immigration authorities, Opp. at 14–15, also misses the mark. The Challenged Provisions apply equally to how the City interacts with state and local officials from other jurisdictions who are authorized by the federal government pursuant to an agreement entered under 8 U.S.C. § 1357(g) to carry out immigration enforcement. *See, e.g.*, Admin. Code § 9-131(a)(4). The Challenged Provisions thus do nothing more than effectuate the City's choice not to assist with immigration enforcement efforts, whether such efforts are carried out by federal, state, or local law enforcement officers.

### III.    THE ANTICOMMANDEERING DOCTRINE BARS PLAINTIFF FROM COMPELLING THE CITY TO ADMINISTER ITS IMMIGRATION PROGRAM

Plaintiff's preemption and intergovernmental immunity claims, if accepted, would require the City to affirmatively assist the federal government in enforcing immigration laws in violation of the Tenth Amendment's anticommandeering doctrine.

Plaintiff's insistence that the Tenth Amendment is not implicated fails to grapple with the relevance of *Murphy* and misapplies Second Circuit precedent. In its explanation of how the anticommandeering doctrine operates, the Supreme Court in *Murphy* summarily dispensed with the distinction between federal laws requiring states and localities to refrain from certain actions and those requiring them to take certain actions. 584 U.S. at 475. Accordingly, *City of New York* (2d Cir. 1999) is of little value because its narrow holding on the facial validity of Sections 1373 and 1644 relied on that very distinction. *Cf. United States v. Williams*, 701 F. Supp. 3d 257, 269 (S.D.N.Y. 2023) (Second Circuit precedent binds district courts only "until Supreme Court precedent renders it untenable") (cleaned up). In light of this binding post-*City of New York* Supreme Court precedent, the federal government's argument that the anticommandeering doctrine is not implicated here because it is allegedly "not seeking to compel participation in immigration enforcement…but rather to remove Defendants' express and implicit obstacles to the Executive's duty to carry out its immigration enforcement duties," is specious.[6] Opp. at 28.

*New York v. U.S. Dep't of Justice* (2d Cir. 2020) is also inapplicable. There, the Second Circuit rejected a facial challenge to Sections 1373 and 1644 and concluded that those sections did not violate the Tenth Amendment in the context of Congress's spending power where the state had

---

[6] Plaintiff's representation that it is not seeking to compel City participation in immigration enforcement is belied by its own Complaint, which takes the City to task, for example, for not holding individuals about to be released from its jails when presented with a detainer or failing to provide release or location information to ICE when requested. *See, e.g.*, Compl. ¶¶ 93–96.

a "legitimate choice" whether to accept or reject federal funding. 951 F.3d at 114–15. Here, though, Plaintiff seeks to apply Sections 1373 and 1644, independent of federal funding, to control the executive functions of the City's own officers. Moreover, Plaintiff seeks to gain the assistance of the City of New York and its employees in administering a federal regulatory program, to wit, civil immigration enforcement. This is prohibited by the anticommandeering doctrine. *See Printz v. United States*, 521 U.S. 898, 933 (1977); *New York v. United States*, 505 U.S. 144, 188 (1992).

Finally, Plaintiff's opposition makes no attempt to dispute the obvious and practical implications of its intergovernmental immunity claims: that a federal statutory scheme could be construed to confer upon the federal government the power to conscript state and municipal officials and resources in a way that *Printz* repudiated.[7] That conscription would improperly arrogate the City's ability to protect its own sovereign interests and would direct City employees to aid the federal government, flouting the anticommandeering doctrine. *See California*, 921 F.3d at 891 (holding that even if a state singles out the federal government by refusing to assist its immigration enforcement efforts, such a decision is within the state's Tenth Amendment rights); *see also New York I*, 2025 U.S. Dist. LEXIS 225875, at *19 ("Finding that [the laws at issue] constitute discrimination or impermissible regulation would provide an end-run around the Tenth Amendment. It would allow the federal government to commandeer states under the guise of intergovernmental immunity – the exact type of direct regulation of states barred by the Tenth Amendment."); *Illinois*, 796 F. Supp. 3d at 535–36 (same).

---

[7] Furthermore, it was of no moment in *Printz* that some provisions of the Brady Handgun Violence Prevention Act placed obligations on private actors. Acknowledging the presence of such provisions, the Court nonetheless invalidated the provisions applicable solely to state or local law enforcement officers, which required them to perform criminal background checks on proposed handgun purchasers, on Tenth Amendment grounds. *Printz*, 521 U.S. at 935.

Accordingly, this Court, like others, should reject the federal government's unsupported Tenth Amendment argument in its entirety. *See, e.g.*, *Illinois*, 796 F. Supp. 3d at 523–24; *New York I*, 2025 U.S. Dist. LEXIS 225875, at *42.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss should be granted, together with such other and further relief as this Court deems just and proper.


Dated:  New York, New York
        February 23, 2026


                                        Respectfully submitted,

                                        STEVEN BANKS
                                        Corporation Counsel of the City of
                                            New York
                                        *Attorney for Defendants*
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-2208
                                        kselvin@law.nyc.gov

                                   By:  ____/s/  Karen B. Selvin_____
                                        Karen B. Selvin
                                        Andrew T. Steffan
                                        Emeline Kong
                                        *Assistant Corporation Counsels*


                                        SHER TREMONTE LLP
                                        Alison Moe
                                        Douglas R. Jensen
                                        Courtney Gans
                                        Benjamin J. Shack Sackler
                                        90 Broad Street, 23rd Floor
                                        New York, New York 10004
                                                          *Of Counsel*

**CERTIFICATION UNDER LOCAL CIVIL RULE 7.1(c)**

In accordance with Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, promulgated pursuant to 28 U.S.C. § 2071 and FED. R. CIV. P. 83, the undersigned certifies that the word count in this memorandum of law (not including the caption, table of contents, table of authorities, and signature block as well as this certification), as established using the word count function on the word-processing system used to prepare it, complies with the word-count limitations of this Court per the Court's February 13, 2026 Order, and is 4,981 words.

Dated: New York, New York
       February 23, 2026

Respectfully submitted,

STEVEN BANKS
Corporation Counsel of the City of
   New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2208
kselvin@law.nyc.gov

By: _____/s/ Karen B. Selvin_____
    Karen B. Selvin
    *Assistant Corporation Counsel*