

**United States Department of Justice**
*Civil Division*
*Enforcement & Affirmative Litigation Branch*
*Post Office Box 386*
*Washington, D.C. 20044-0386*
*Tel: (202) 451-7488*
*Email: robert.o.lindefjeld@usdoj.gov*

July 17, 2026

**VIA CM/ECF**

Hon. Ramon E. Reyes, Jr.
U.S. District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *United States v. City of New York et al.*, No. 1:25-cv-04084
     Plaintiff's Supplemental Letter Brief in Response to the Court's Scheduling Order

Dear Judge Reyes:

  On May 29, 2026, Defendants filed a letter [ECF 68] notifying the Court of a decision in *United States of America v. City of Boston et al.*, No. 1:25-cv-12456-LTS, ___ F. Supp. 3d ___, 2026 WL 1493706 (D. Mass. May 28, 2026). Subsequently, on June 29, 2026, this Court entered a Scheduling Order, instructing Plaintiff United States to file a supplemental letter brief by July 17, 2026 addressing the standing arguments made by the court in the *City of Boston* case "as they may apply to the case before this Court." Defendants are ordered to file their supplemental letter brief by August 5, 2026. This supplemental letter brief is respectfully submitted on behalf of Plaintiff United States in response to the Court's Scheduling Order.

  **A.** *City of Boston* **has no bearing on this matter.**

  In *City of Boston*, the United States challenged the Boston Trust Act on Supremacy Clause grounds, specifically "the Act's prohibition on holding or arresting individuals solely on the basis of civil immigration detainers and administrative warrants." 2026 WL 1493706, at *5. The court's holding was primarily based on Massachusetts Supreme Court precedent standing for the proposition "that Massachusetts law provides no authority for Massachusetts court officers to arrest and hold an individual solely on the basis of a Federal civil immigration detainer." *Lunn v. Commonwealth*, 78 N.E.3d 1143, 1160 (2017). The court concluded that, based on *Lunn*, the United States' purported injury with respect to the detainer provisions of Boston's Trust Act was not redressable where no authority empowers Boston law enforcement to detain someone based on a federal civil immigration detainer or administrative warrant in the first place. 2026 WL 1493706, at *7. Accordingly, an order enjoining the enforcement of the detainer provisions of the Trust Act "could not alter this status quo" and the United States could not establish standing. *Id.*

The same is not true of the Defendants here, and they do not argue otherwise or even allege that there is a standing defect in this case. Consistent with the approach taken by the *City of Boston* court, an order enjoining the challenged provisions' prohibition on cooperation with civil immigration detainers *would*, indeed, alter the status quo, because it would give New York City law enforcement the option to cooperate with immigration detainers and administrative warrants. Whether or not all of these law enforcement officers would cooperate is not relevant. As even the *City of Boston* court acknowledged (in discussing the standing decision in *United States v. Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025), an order enjoining the challenged provisions here *without* such a ruling from the state's highest court or an edict from the state legislature would *at the very least partially* redress the United States' injuries, which suffices to demonstrate standing. *See City of Boston*, 2026 WL 1493706 at *8 ("It is true, as the United States argues, that redress need not be 'complete' to support Article III standing."); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992))).

In the *City of Boston* case, the United States also challenged the Boston Trust Act's prohibition on the use of funds and personnel for immigration enforcement purposes, including providing individuals' personal information to Immigration and Customs Enforcement. *City of Boston*, 2026 WL 1493706 at *3; *id.* at *5. The court held that the United States did not establish standing to challenge these information sharing provisions on traceability and redressability grounds. *Id.* at *11. According to the *City of Boston* court, the information the Boston Trust Act prohibits city officials from sharing "falls squarely outside the ambit of § 1373" where it "does not prohibit the sharing of information 'regarding the citizenship or immigration status, lawful or unlawful, of any individual.'" *Id.* (quoting 8 U.S.C. § 1373(a)).

Plaintiff United States respectfully submits that information concerning the release of aliens from local custody *is* information "regarding the citizenship or immigration status, lawful or unlawful, of any individual." Under the Immigration and Nationality Act, aliens cannot be removed by federal immigration officials until "until the alien is released from imprisonment." 8 U.S.C. § 1231(a)(4)(A). Once that sentence is served, it is at that point the alien becomes removable. *Id.* § 1231(a)(1)(B)(iii). But removable aliens must be detained by federal immigration authorities while removal is pending. *See id.* § 1231(a)(1)(A), (2)(A). Therefore, information about an illegal alien's release date is pertinent to the alien's immigration status (i.e., removability) and requires federal detention to begin at the moment of release from local custody. Prohibitions against sharing that information are themselves thus prohibited by federal law under 8 U.S.C. § 1373(a) and 8 U.S.C. § 1644.

Information that governs whether and when an alien is subject to removal from the United States is plainly "information regarding . . . immigration status," especially because words such as "regarding" in statutory construction "generally ha[ve] a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *See Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018). When Congress uses such broadening words—as it did in 8 U.S.C.§§ 1373(a) and 1644—it intends "to reach any subject that has 'a connection with, or reference to,' the topics the statute enumerates." *United States v. Kraemer*,

933 F.3d 675, 679 (7th Cir. 2019) (quoting *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S.87, 96 (2017) (discussing the related phrase "relating to"). As such, Plaintiff respectfully submits that the *City of Boston* court's interpretation of Sections 1373(a) and 1644 is wrong.

Moreover, the traceability and redressability shortfalls perceived by that court are not present in the case before this Court. The harm suffered by the United States is fairly traceable to the information sharing restrictions of the challenged provisions because "without them, [] local law enforcement would be free to cooperate with federal immigration authorities." *Illinois*, 796 F. Supp. 3d at 510. An order enjoining the information sharing restrictions in the challenged provisions would provide the United States with the relief it seeks. *See id.* ("Enjoining the Policies would redress the alleged harm by removing definitive impediments to federal immigration policy. This would provide tangible relief[.]"); *see also United States v. Missouri*, 114 F.4th 980, 985 (8th Cir. 2024).

In sum, the *City of Boston* decision is not determinative of the outcome of this case, and Defendants can provide no reasonable argument to the contrary.

### B.  The United States has constitutional standing to enforce the U.S. Constitution.

The United States also respectfully submits that *City of Boston* was wrongly decided on the issue of constitutional standing. The United States' standing to enforce the Supremacy Clause and other federal laws is well-established. If the Federal Government does not have standing to enforce the U.S. Constitution—literally, the very document that *forms* the Federal Government—then who could enforce it?

Constitutional standing is an indispensable component of the case-or-controversy requirement of Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "The irreducible constitutional minimum of standing requires three things:" "an injury in fact … that is 'concrete and actual or imminent, not conjectural or hypothetical[,]'" "a 'fairly traceable' causal connection 'between the plaintiff's injury and the complained-of conduct of the defendant[,]'" and "a likelihood that the requested relief will redress the alleged injury." *Robinson v. Sessions*, 260 F. Supp. 3d 264, 271 (W.D.N.Y. 2017) (internal citations and quotations omitted).

The United States possesses standing because it "has a legally protected interest in enforcing federal law." *Missouri*, 114 F.4th at 984-85 (Missouri's statute classifying various federal firearms laws as infringements of the Second Amendment was a "concrete and particularized" injury to the United States by violating the Supremacy Clause) (citing *United States v. Colo. Sup. Ct.*, 87 F.3d 1161, 1165 (10th Cir. 1996), and *Crow Indian Tribe v. United States*, 965 F.3d 662, 676 (9th Cir. 2020)), *cert denied*, 146 S. Ct. 90 (2025). The United States has suffered an injury in fact where the City of New York and its subdivisions have passed a law and implemented policies that both violate and undermine federal law. *See, e.g.*, *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012); *United States v. Florida*, 172 F.4th 1201, 1222 (11th Cir. 2026). The Supreme Court has recognized that "[i]t is beyond doubt that [a] complaint asserts an injury to the United States" where it alleges an "injury to its sovereignty arising from

violation of its laws[.]" *Vermont Agency of Nat. Resources. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *see also Missouri*, 114 F.4th at 984 ("The United States has a legally protected interest in enforcing federal law."); *Stauffer v. Brooks Bros.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010) ("[A] violation of [the] [federal] statute inherently constitutes an injury to the United States .... The parties have not cited any case in which the government has been denied standing to enforce its own law."); *United States v. Arlington Cnty.*, 669 F.2d 925, 929 (4th Cir. 1982) ("The United States can sue to enforce its policies and laws, even when it has no pecuniary interest in the controversy."); *accord* 13B WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 3531.11 (3d ed. 2010 & Sept. 2025 supp.) ("Standing *to pursue the general interests of the public* is easily recognized when federal officials responsible for enforcing specific statutory schemes bring suit under the aegis of the statute." (emphasis added)).

The challenged provisions also pose an obstacle to the Federal Government's enforcement of the immigration laws, increasing burdens on costs on federal agencies charged with that responsibility. *E.g.*, Compl. ¶¶ 7-8, 11, 85-100, 104-105. That constitutes the kind of pocketbook injury that independently establishes standing. *Tyler v. Hennepin Cty., Minnesota*, 598 U.S. 631, 636 (2023) (financial harm is "a classic pocketbook injury sufficient to give her standing").

Moreover, there is "a causal connection between the injur[ies] and the conduct complained of." *Lujan*, 504 U.S. at 560. The challenged provisions act as an impediment to federal immigration enforcement, and without them, federal immigration agents may be able to count on the support and cooperation of local law enforcement. *See Illinois*, 796 F. Supp. 3d at 510. As the Second Circuit has explained, "[a]bsent any cooperation at all from local officials, some federal programs[,]" such as the immigration system, "may fail or fall short of their goals[.]" *New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999). Here, the barriers imposed by the challenged provisions provide the causal link to the injuries pled in the Complaint.

Finally, an order enjoining the challenged provisions would redress some or all of the injuries by removing these sovereign injuries and barriers to cooperation with federal immigration authorities. *Knight v. City of New York*, 164 F.4th 173, 179 (2d Cir. 2026); *Illinois*, 796 F. Supp. 3d at 510.

Plaintiff United States thanks the Court for its consideration of this issue and urges the Court to determine that the Federal Government has standing to enforce the laws of the United States.

Respectfully submitted,


 */s/ Robert O. Lindefjeld*
ROBERT O. LINDEFJELD
Assistant Director,
United States Department of Justice
cc: Counsel of Record (via CM/ECF)          Enforcement & Affirmative Litigation Branch